UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN JAKUBOWSKI,

                Petitioner,          Case No. 2:19-cv-13136
                                                 Hon. Denise Page Hood

v.

WILLIS CHAPMAN,

                Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING CERTIFICATE OF APPEALABILITY, AND (3) DENYING PERMISSION TO APPEAL IN FORMA PAUPERIS**

John Jakubowski filed this habeas case under 28 U.S.C. § 2254. Petitioner was convicted after a jury trial in the Wayne Circuit Court of felonious assault, MICH. COMP. LAWS § 750.82, and domestic violence. MICH. COMP. LAWS § 750.81(2). He was sentenced to 1½ to 6 years for the assault conviction and 28 days for the domestic violence conviction. Petitioner discharged from his sentence on October 29, 2020.

The petition raises four claims: (1) the trial court's questioning of the victim indicated its bias against Petitioner, (2) defense counsel was ineffective for failing to object to the questioning of the victim by the trial court, (3) Petitioner's sentence was unreasonable given his age, and (4) the trial court unconstitutionally scored the

sentencing guidelines based on facts not determined beyond a reasonable doubt by the jury.

Because the claims are without merit, the court will deny the petition. The court will also deny a certificate of appealability and deny leave to appeal in forma pauperis.

## I. Background

The charges against Petitioner arose from an incident at his Detroit home occurring on April 2, 2015.

Petitioner's wife, Sandra Davis, testified at his jury trial that on April 1, 2015, Petitioner hit her, and her sister-in-law and a friend became aware of his conduct. During the morning hours of April 2, 2015, Petitioner screamed at Davis for getting other people involved in their personal lives. ECF No. 11-4, at 102-104. Petitioner jumped on top of her, grabbed her by the throat, and he punched her in the cheek. Petitioner then took her cell phone and disconnected the land-line phone. Petitioner locked Davis in the bedroom with a padlock. Id., at 102-109.

While Davis was held in the bedroom, Petitioner returned about a dozen times to punch her in the face or head. At some point, Davis convinced Petitioner that she needed to use the bathroom. She tried to make a run for the front door, but Petitioner caught her and slammed her onto the floor. Id. at 109-112.

Davis testified that Petitioner knelt on her chest and swung a golf club at her head. He then locked her back in the bedroom. When he returned to the bedroom, he told her that she could never leave him. After convincing him that she would not leave him, Petitioner allowed her to call her mother provided that she did not tell her what was going on. Petitioner warned Davis that he would shoot her if she complained to her mother. Davis testified that Petitioner was holding a revolver at her side. Nevertheless, Davis told her mother that Petitioner was hitting her. Petitioner put the gun down and started crying. Davis again tried to leave, but Petitioner put her in the kitchen and blocked the door. Id., at 112-117.

Davis eventually managed to get out of the kitchen and tried to leave the house. Petitioner punched and kicked her all the way to the front door, and he said, "Get out of my house, you bitch." Petitioner slammed her head into the wall and punched her in the head. Id., at 117-118.

Davis was able to open the front door and run out of the house. She drove to her mother's house, and her mother took her to Oakwood Hospital. She had bruises on her head, breasts, back, hip, legs and arms. A photograph of her injuries was shown to the jury. Id., at 121-127.

While Davis was in the hospital, Petitioner called multiple times and left messages that he was going to report her for stealing his car. He also threatened to

have her mother arrested for kidnapping. Davis went to the police the next day. Id., at 126-127.

Following cross-examination, which mainly focused on discrepancies between Davis's testimony and her statement to police, the trial court questioned Davis. The court asked Davis about her and Petitioner's employment, whether Petitioner used a cane because of a disability, whether Petitioner had beaten her previously, who had installed the rasps and locks on the interior doors, how long she was locked in the bedroom, whether she had access to a phone, whether she told her sister-in-law what happened, whether she ever returned to Petitioner's house after April 2, and why she did not mention anything about Petitioner having a gun to the police. Id., at 146-153.

The prosecutor recalled Davis for the purpose of admitting her medical records from Oakwood Hospital. Id., at 159-163.

Detective William Drabkowski testified that he took Davis's statement when she came to the domestic violence unit on April 3, 2015. Id., 165-166. He confirmed that the photograph was a fair and accurate representation of her injuries on April 3. Id., at 166-167. On cross-examination, he testified that he did not see any strangulation marks on Davis's neck or a knot on her head, and he did not note any in his report. Id., at 168-171.

After the prosecution rested, Petitioner confirmed on the record that he would not be testifying. ECF No. 11-5, at 5. After closing arguments and instructions by the judge, the jury deliberated and returned with a verdict of guilty of felonious assault and domestic violence. Id., at 45.

At the sentencing hearing, the advisory guidelines were scored to call for a recommended minimum sentence between 0 and 21 months. ECF No. 11-6, at 7-8. The court sentenced Petitioner within the guidelines to 18 months to 6 years for the assault, and 28 days for the domestic violence. Id., at 12-13.

Petitioner was appointed appellate counsel who filed a delayed application for leave to appeal in the Michigan Court of Appeals. The application raised three claims:

> I. The trial judge violated Mr. Jakubowski's due process right to a fair trial when he extensively asked Ms. Davis questions that suggested the judge's belief in the prosecution's case and his belief in Mr. Jakubowski's bad character.
>
> II. Mr. Jakubowski was denied his state and federal constitutional right to the effective assistance of counsel where counsel did not object to Judge Callahan's extensive examination of Ms. Davis.
>
> III. Mr. Jakubowski is entitled to resentencing where the trial court imposed an unreasonable sentence of 1-1/2 to 6 years imprisonment for felonious assault for this middle-age habitual offender.

Petitioner also filed a supplemental pro se brief in support of his application for leave to appeal that raised three additional claims:

> I. Jakubowski is entitled to a new trial when the prosecuting attorney withheld exculpatory photographs from the defense in violation of *Brady v. Maryland*.
>
> II. Jakubowski was subjected to ineffective assistance of counsel when trial counsel failed to raise the untimely surrender of exculpatory photographs by the prosecution, failed to introduce any evidence for the defense, and failed to call Jakubowski as a witness at trial.
>
> III. Jakubowski's sentencing guidelines were unconstitutionally constrained by the trial court's scoring of offense variables through judicial fact-finding of events not admitted to by Jakubowski, nor found by the jury, as prohibited by *People v. Lockridge*.

The Michigan Court of Appeals denied the delayed application "for lack of merit in the grounds presented." *People v. Jakubowski*, No. 334155 (Mich. Ct. App. December 9, 2016). Petitioner appealed, but the Michigan Supreme Court denied his application for leave to appeal by form order. *People v. Jakubowski,* 933 N.W.2d 265 (Mich. 2019) (Table).

## II. Standard of Review

28 U.S.C. § 2254(d) curtails federal habeas review of state convictions for claims adjudicated on the merits by state courts. A habeas petitioner must generally demonstrate that the state court adjudication was "contrary to" or "involved an unreasonable application of" clearly established Supreme Court law. *Id*. A decision is "contrary to" clearly established Supreme Court law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of

6

materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409.

Under this standard, a federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

In the present case, the AEDPA deferential standard of review applies because the Michigan Court of Appeals rejected Petitioner's delayed application for leave to appeal "for lack of merit in the grounds presented." This decision amounted to a decision on the merits. *See Werth v. Bell*, 692 F. 3d 486, 492-94 (6th Cir. 2012).

### III. Analysis

A. Trial Court Bias

Petitioner's first claim asserts that the manner the trial court questioned the victim at trial indicated the court's bias against him. His related second claim asserts that his trial attorney was ineffective for failing to object to the questioning.

"Due process requires a fair trial before a judge without actual bias against the defendant or an interest in the outcome of his particular case." *United States v. Armstrong*, 517 U.S. 456, 468 (1996). Because of the difficulty in determining "whether a judge harbors an actual, subjective bias," courts look to "whether, as an objective matter, the average judge in [that judge's] position is likely to be neutral, or whether there is an unconstitutional potential for bias." *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1905, 195 L. Ed. 2d 132 (2016) (internal quotations omitted).

The Supreme Court has recognized constitutionally impermissible, objective indicia of bias in the following types of cases: (1) those cases in which the judge "has a direct, personal, substantial pecuniary interest in reaching a [particular] conclusion," *Tumey v. Ohio*, 273 U.S. 510, 523 (1997); (2) certain contempt cases, such as those in which the judge becomes personally embroiled with the contemnor; and (3) cases in which a judge had prior involvement in the case as a prosecutor, *Williams*, 136 S. Ct. at 1905.

None of these objective indicia of bias are implicated by the facts of this case. Instead, Petitioner asserts that the trial court's questioning of the victim indicated his bias. The Michigan Rules of Evidence provide, however, that "[t]he court may interrogate witnesses, whether called by itself or by a party." MICH. R. EVID. 614(b). "The trial judge's duty is to conduct a trial in an orderly fashion and obtain truth and justice. He must see to it that the issue are not obscured and the testimony is not

misunderstood. The trial court has the right to interrogate witnesses for this purpose." *United States v. Pierce*, 62 F.3d 818, 834 (6th Cir. 1995); accord *Glasser v. United States*, 315 U.S. 60, 82 (1942). Nevertheless, a trial court may not conduct questioning in a way as to give the appearance of partiality to the jury, thereby prejudicing the defendant. *United States ex rel. Bradley v. Hartigan*, 612 F. Supp. 795, 810 (C.D. Ill. 1985), aff'd sub nom. *United States ex rel. Bradley v. Lane*, 834 F.2d 645, 648-49 (7th Cir. 1987).

The questioning conducted by the trial court in the present case did not suggest any bias. The court's questions were aimed at clarifying the testimony of the witness. The court asked the victim about Petitioner's cane, a matter relevant to his ability to physically overcome her. He asked about prior abuse and about the hasps and locks on the interior doors, matters that were relevant to her credibility. The court sought clarification about how long the victim was locked in the bedroom, whether she had access to a cell phone during the ordeal, why she failed to tell her sister-in-law to go the police or do so herself on April 1 or 2, and why she did not mention the gun to the police. ECF No. 11-4, at 146-53. The manner of the questioning did not suggest that the trial court believed the victim's testimony or that he believed Petitioner to be guilty. Indeed, had the victim answered the questions differently, the questions would have benefitted the defense. The questions themselves did not favor either

side. Petitioner has therefore failed to demonstrate that the trial court was biased against him.

Further, the court instructed the jury that its comments, rulings, and instructions were not evidence, that the jury was the sole judge of the facts, that his comments and rulings should not be viewed as an expression of his personal opinion about the case, and that if the jurors felt that he had an opinion about how they should decide the case they were to disregard it. ECF No. 11-5, at 27-28. This curative instruction lessened the prejudicial effect, if any, of the judge's questions. *See McBee v. Grant*, 763 F.2d 811, 818 (6th Cir. 1985).

Finally, Petitioner's counsel was not ineffective for failing to object to the questioning of the trial court because no objectionable error occurred. *See Mahdi v. Bagley*, 522 F.3d 631, 638 (6th Cir. 2008) ("No prejudice flows from the failure to raise a meritless claim.").

Accordingly, Petitioner's first two claims are without merit.

B. Sentencing Errors

Petitioner's third claim asserts that his sentence was unreasonable in light of his age. His fourth claim asserts that the court unconstitutionally based Petitioner's sentence on guidelines factors not determined beyond a reasonable doubt by the jury.

A federal court may grant a writ of habeas corpus only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28

U.S.C. §§ 2241(c)(3) and 2254(a). Therefore, violations of state law and procedure, which do not infringe specific federal constitutional protections, are not cognizable claims under Section 2254. *Estelle v. McGuire*, 502 U.S. 62 (1991).

Petitioner's argument that his sentence was "unreasonable" raises only a state law claim. In *People v. Lockridge*, 498 Mich. 358 (2015), decided before Petitioner's sentencing proceeding, the Michigan Supreme Court made the state sentencing guidelines advisory rather than mandatory but did not give the sentencing court unrestricted discretion to sentence outside the advisory range. *Id*. at 392. Where the court sentences outside the advisory range, the resulting sentence must be reasonable. *Id*. "Reasonableness" as used in *Lockridge* is determined by application of the Michigan Supreme Court's decision in *People v. Milbourn*, 435 Mich. 630 (1990). *See People v. Steanhouse*, 500 Mich. 453 (2017). Petitioner's claim that his sentence was unreasonable is therefore based upon state law principles established in *Milbourn* and not any principle of federal constitutional law. *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'") (quoting 28 U.S.C. § 2254(a)).

Petitioner's claim that his sentence was unconstitutionally based on facts not found by the jury beyond a reasonable doubt ignores the fact that he was sentenced after *Lockridge* had been decided and the sentencing guidelines had been made

11

advisory. After *Lockridge*, a Michigan trial court's imposition of a sentence is "an exercise of the court's discretion" regardless of how the trial court may have been "guided by the sentencing guidelines." *Holder v. Jackson*, 2017 WL 3205762, at *4 (W.D. Mich. July 28, 2017). "The facts found to support the exercise of that discretion do not 'increase the penalty for the crime beyond the prescribed statutory maximum,' or 'increase the mandatory minimum.'" *Id*. (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) and *Alleyne v. United States*, 570 U.S. 99, 103 (2013)). Because Petitioner was sentenced after the Michigan Supreme Court decided *Lockridge,* his claim that the trial court erred in its scoring of the offense variables is not cognizable on federal habeas review. *See Austin v. Jackson*, 213 F.3d 298, 300-301 (6th Cir. 2000).

Petitioner's sentencing claims are therefore without merit.

## IV. Certificate of Appealability

In order to appeal the Court's decision, Petitioner must obtain a certificate of appealability. 28 U.S.C. § 2253(c)(2). The applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States*, 310 F.3d 900,

901 (6th Cir. 2002). Here, jurists of reason would not debate the Court's conclusion that Petitioner has failed to demonstrate entitlement to habeas relief because his claims are devoid of merit.

Finally, Petitioner is denied permission to appeal in forma pauperis because any appeal would be frivolous. 28 U.S.C. § 1915(a)(3).

## V. Conclusion

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, 2) **DENIES** a certificate of appealability, and 3) **DENIES** permission to appeal in forma pauperis.

**SO ORDERED.**

s/Denise Page Hood
United States District Judge

Dated: January 26, 2021